MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:      2018 ME 139
Docket:        Yor-18-100
Submitted
  On Briefs:   September 26, 2018
Decided:       October 4, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

IN RE CHILD OF ANGELA H.

PER CURIAM

[¶1]   Angela H. appeals from an order entered by the District Court (Springvale, *Foster, J.*) finding that her minor child is in jeopardy pursuant to 22 M.R.S. § 4035 (2017). The mother challenges the sufficiency of the evidence supporting the court's finding, by a preponderance of the evidence, that the child is in jeopardy. We affirm the judgment.

[¶2]   The Department of Health and Human Services filed a child protection petition against the mother as to this child in September of 2017,[1] alleging that the mother neglected the child's medical needs and failed to adequately supervise the child. After a two-day testimonial hearing, by a decision entered on February 21, 2018, the court found the following facts by a

---

[1]  The mother has other children who are not at issue in this appeal. The Department also instituted child protection proceedings against the father, but the father agreed to a finding of jeopardy and is not a party to this appeal.

preponderance of the evidence, each of which is supported by competent evidence in the record. *See* 22 M.R.S. § 4035(2).

[¶3]  In 2011, concerns were raised with the Department regarding whether this child was receiving appropriate medical care for his Type 1 diabetes, with which he was diagnosed as a young child.  The mother, with whom the child primarily resides, received services designed to promote the child's regular attendance at medical appointments and monitor the necessary testing of the child's blood.  After the child was hospitalized twice for diabetic ketoacidosis, the Department again worked with the mother regarding the child's medical needs.  The mother reported then that she was "unwilling to monitor her son's testing as he needed to learn how to care for his own medical needs in regard to his chronic condition."  The child was eight years old at the time.  The child's medical providers again referred the family to the Department in 2016 when the child failed to attend scheduled medical appointments.

[¶4]  In April of 2017, the child was expelled from school for possession of marijuana on school grounds.  The school listed the tasks the child was required to complete before he could be readmitted to school, including counseling, community service, and certain homework assignments.  The child

did not do so before the end of the school year and was not readmitted until October of 2017.

[¶5]  Meanwhile, as a consequence of his expulsion, the child's regular visits with the school nurse to monitor his blood sugar were discontinued.  The child also missed multiple medical appointments between June and August of 2017, notwithstanding the efforts of his medical providers to engage the mother in addressing the child's needs.  In September, the child was again hospitalized for diabetic ketoacidosis.  The mother complained that she would have to be near her son on a constant basis to monitor the child's health, stated that she hoped that being hospitalized would motivate the child to better manage his condition, and expressed anger at being expected to take the child to the hospital after her long work day.  On multiple days in November and December of 2017, the child left school early and, on one occasion, had to be taken to the hospital, because his blood sugar numbers were outside the norm.  Although the mother has opined that the child's difficulties in managing his diabetes are related to a mental health issue, she has not followed through on multiple opportunities to obtain counseling for him.

[¶6]  The court found,

The Guardian [ad litem] concluded that the parents' inability to communicate and reach agreement on how to manage their son's

diagnosis and respond to medical emergencies has resulted in inconsistent care and unsustainable plans that have placed [the child] at risk of physical harm. Throughout this case, [the mother] rejected responsibility for any of the difficulties in her life and often provided explanations for events that portrayed her as the victim of others.

. . . .

As the Guardian points out, both of [the child's] parents are able to articulate what needs to be done to properly manage their son's diabetes as well as the dangers posed by a failure to do so. At trial, [the mother] gave a thorough and cogent description of what daily testing and monitoring entails. Even when she was without insurance, she has apparently ensured that [the child] still has the supplies, medicine, even snacks he requires for his condition. Despite that, [the mother] has been unwilling or unable to support her son in a manner that ensures the condition is appropriately addressed. At the heart of this issue is [the mother's] long-held conviction that her son should be able to manage his condition independent of any oversight by her or [the father].

At the [family team meeting] on September 21, 2017 [the mother] reiterated her conviction that [the child] was old enough to take care of himself. Even as she maintained that, [the child] was in the hospital for the fourth time for diabetic ketoacidosis. . . . In her testimony, [the mother] pointed out that her son was only three years short of being an adult. She acknowledged that he has not always been truthful about when and what he has eaten, critical information when assessing his condition. Yet she had no contingency plan to address that reality.

. . . .

[The mother] seems to have abdicated responsibility for her son on a number of fronts. Although she insisted it had been very important to her that [the child] be readmitted to school, her explanations for the delay were nebulous, unconvincing, and in

some instances unreliable.  The Court agrees with the Guardian's assessment that no action was undertaken on [the child's] school re-entry plan until he and the Department's caseworker became involved . . . .

. . . .

[The mother] pledged to follow the current safety plan, even if the Department is not involved with her family.  Her history suggests otherwise.  This is a critical time for [the child].  Failure to support and supervise him as he struggles to gain mastery over his diabetes could be fatal.  The family history documents a chronic inability to follow through on essential components of [the child's] life.  While there have been observable improvements in [the child's] health and ability to manage his own care, there is every reason to believe those would fade away without mandatory oversight from the Department and the court.

(Footnote omitted.)  Based on these findings, the court determined,

Jeopardy in this matter consists of the risk of physical and emotional harm arising from the parent's unwillingness and/or inability to ensure appropriate support and supervision for [the child's] medical care, education, and mental health treatment.  [The mother] has repeatedly failed to ensure [the child's] medical needs are met and failed to take expeditious action to ensure he was re-enrolled in school.

The court ordered that the child remain in the mother's custody subject to certain conditions.[2]  *See* 22 M.R.S. §§ 4002(6), 4035(2), (3), 4036(1)(A)-(C)

---

[2] Those conditions included that the child shall primarily reside with the mother, the mother must allow the Department caseworker and the guardian ad litem access to the child, the mother must comply with the Department's requirements for visitation and contact, and the mother must sign releases to allow the Department access to the child's records.  *See* 22 M.R.S. § 4036(1)(A)-(C) (2017) (allowing the court, in fashioning a protection order, to order "[n]o change in custody"; "[d]epartmental supervision of the child and family in the child's home"; and "[t]hat the child, the custodians, the parents and other appropriate family members accept treatment or services to

(2017). The mother timely appeals the court's finding of jeopardy. *See* 22 M.R.S. § 4006 (2017); M.R. App. P. 2B(c)(1).

[¶7] The mother contends that there is insufficient evidence to support a finding of jeopardy because she has alleviated all of the Department's concerns and because there is no evidence that she presents jeopardy to the child on a prospective basis. We review the court's findings for clear error, and we will uphold the jeopardy determination if there is any competent evidence in the record to support it. *See In re Nicholas S.*, 2016 ME 82, ¶ 9, 140 A.3d 1226.

[¶8] We agree with the mother that "the question before the court is necessarily whether there is *prospective* jeopardy," but we note that "[e]vidence of past jeopardy is relevant to the future, and in the case of a custodial parent it is highly probative." *In re Tabitha R.*, 2003 ME 76, ¶ 7, 827 A.2d 830. Here, there is competent evidence to support the court's finding that the jeopardy the mother presents to the child is prospective and not just historical; there was evidence that the poor management of the child's medical condition has been a chronic problem for at least seven years, the mother is unlikely to adhere to the

---

ameliorate the circumstances related to the jeopardy," among other authorized dispositions); *see also In re Alivia B.*, 2010 ME 112, ¶ 10, 8 A.3d 625 ("The statutory scheme [of section 4036] authorizes the court to permit a child to remain in a parent's custody even after a finding of jeopardy while that parent engages in reunification and related services." (citation omitted)).

safety plan necessary to prevent future problems with his diabetes without Department oversight, and the mother continues to expect the child to manage his diabetes without adequate supervision or assistance. Because the court's findings are supported by competent record evidence, we do not disturb the court's determination that the child is in circumstances of jeopardy. *See* 22 M.R.S. §§ 4002(6), 4035; *In re Nicholas S.*, 2016 ME 82, ¶ 9, 140 A.3d 1226.

The entry is:

Judgment affirmed.

---

Stephen H. Shea, Esq., Fairfield & Associates, P.A., Portland, for appellant mother

Janet T. Mills, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Springvale District Court docket number PC-2017-31
FOR CLERK REFERENCE ONLY