2012 ME 79

**Budd P. GRANT**

v.

**Jessica L. HAMM.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 26, 2012.

Decided: June 19, 2012.

Joe Lewis, Esq., Port City Legal, Portland, for appellant Jessica L. Hamm.

Toff Toffolon, Esq., Machias, for appellee Budd P. Grant.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] Jessica L. Hamm appeals from a judgment of the District Court (Waterville, *Dow, J.*) awarding sole parental rights and responsibilities of the parties' daughter to Budd P. Grant. *See* 19–A M.R.S. § 1653 (2011). Hamm argues that the court abused its discretion by relying largely on its determination that she willfully misused the protection from abuse process, 19–A M.R.S. § 1653(3)(O), to the exclusion of other best interest factors and without making adequate findings. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Budd Grant and Jessica Hamm are the parents of a three-year-old daughter. They lived together off and on for two and a half years, until May 2009, when Hamm assaulted Grant in their car with their daughter present. Soon after, Grant filed a complaint in Waterville District Court seeking a determination of parental rights and responsibilities.

[¶ 3] A guardian ad litem (GAL) was appointed at Hamm's request in December 2009.[1] In February 2010, the GAL filed a motion requesting an interim order on parental rights and responsibilities. After a summary emergency hearing, the court (*Dow, J.*) granted sole parental rights and responsibilities to Grant with twice-weekly supervised visitation for Hamm. The order was superseded in March 2010 by an interim order in which the court (*Mathews, M.*) ordered shared parental rights and responsibilities, allocating primary physical residence to Hamm from Monday morning to Thursday evening and to Grant from Thursday evening to Monday morning.

[¶ 4] In April 2010, Hamm filed a protection from abuse (PFA) complaint against Grant, alleging that Grant had sexually abused their daughter. After a hearing, the court (*Nivison, J.*) concluded that there was insufficient evidence of abuse and denied Hamm's complaint for a temporary protection order. However, the court concluded that it "was sufficiently concerned about the child's welfare to issue emergency relief" and therefore entered an order modifying the existing interim parental rights and responsibilities order by requiring that each parent be supervised by a relative when each had custody of the daughter. Hamm later voluntarily dismissed the PFA complaint before a final hearing on the complaint was held.

[¶ 5] A hearing on Grant's parental rights and responsibilities petition was held in September 2011. Both Grant and Hamm testified, as did a caseworker from the Department of Health and Human Services and the GAL. In a judgment dated October 26, 2011, the court (*Dow, J.*) allocated sole parental rights and responsibilities and the daughter's primary residence to Grant. The court granted Hamm visitation for four hours every Wednesday, eight hours every other Saturday, eight hours every Mother's Day, and eight hours every other Thanksgiving and Christmas. The court also awarded Hamm rights of contact with the daughter at "all reasonable times as [Grant] may agree," but excluded overnight visits, and granted her the right to make emergency medical decisions when the daughter is in her care. Hamm receives disability benefits, and the

1. The GAL helped Grant file a protection from abuse complaint on behalf of the daughter against Hamm in February 2010, alleging abusive and volatile behavior by Hamm against Grant in front of their daughter. Although the record reflects that the complaint was ultimately dismissed, it does not reflect why.

court did not order Hamm to pay child support, finding that she was not working and was "not reasonably able to work, due to her mental disabilities and lack of meaningful work history." This appeal followed.

## II. LEGAL ANALYSIS

▌ [¶ 6] When a court determines parental rights and responsibilities, it applies the best interest of the child standard as set forth in 19–A M.R.S. § 1653(3). *In re Jacob C.*, 2009 ME 10, ¶ 15, 965 A.2d 47. We review the court's factual findings for clear error, *id.*, and its ultimate conclusion regarding the child's best interest for an abuse of discretion, *In re Alivia B.*, 2010 ME 112, ¶ 12, 8 A.3d 625. "The judgment of the trial court is entitled to very substantial deference because the court is able to appraise all the testimony of the parties and their experts." *Id.* (quotation marks omitted).

[¶ 7] Hamm's argument has two components. First, she argues that the court misapplied section 1653(3)(O), pertaining to the willful misuse of the protection from abuse process, by failing to expressly make certain findings required by statute. Second, she argues that the court improperly relied primarily on this factor and only a limited subset of additional best interest factors in rendering its decision. We consider each argument in turn.

### A. Willful Misuse of the Protection from Abuse Process

▌ [¶ 8] The best interest factor listed in section 1653(3)(O) relates to a "parent's prior willful misuse of the protection from abuse process . . . in order to gain tactical advantage" in a parental rights and responsibilities proceeding. 19–AM.R.S. § 1653(3)(O). The statute expressly states that

[s]uch willful misuse may only be considered if established by clear and convincing evidence, and if it is further found by clear and convincing evidence that in the particular circumstances of the parents and child, that willful misuse tends to show that the acting parent will in the future have a lessened ability and willingness to cooperate and work with the other parent in their shared responsibilities for the child. The court shall articulate findings of fact whenever relying upon this factor as part of its determination. . . .

*Id.* The requirements of the statute track the requirements first established in *Campbell v. Campbell*, 604 A.2d 33, 34 (Me.1992). There, in addition to requiring express findings that the primary purpose for the complaint was to gain a tactical advantage and that the parent's action showed a diminished ability to cooperate with the other parent, we stated that a trial court must expressly find that the parent bringing the complaint for protection "had no reasonable ground for it" and "that parent knew or ought to have known there was no reasonable ground for it." *Id.* at 37.

[¶ 9] Here, the court expressly found

by clear and convincing evidence that [Hamm] has willfully misused the protection from abuse (PFA) process when she sought a PFA order against [Grant] on April 16, 2010. . . . Prior to [Hamm's] filing the PFA complaint, she dropped off [the daughter] to [Grant] for a scheduled visit, and she told [Grant] . . . "You and the GAL stole the baby from me, and I'm going to steal her back." [Hamm] simply did not have sufficient basis to form a reasonable belief that [Grant] had sexually abused [the daughter], but she subjected [the daughter] to a full examination for sexual abuse. . . . No evidence that [Grant] sexually

abused [the daughter] was ever presented.

On another occasion during the pendency of this case, [Hamm] had [the daughter] examined by emergency medical personnel alleging physical abuse of [the daughter] by [Grant]. The GAL accompanied [Hamm] to the hospital with [the daughter], as [Hamm] alleged that [the daughter] was covered in bruises upon returning from [Grant's] home. The GAL observed absolutely no signs of physical abuse on [the daughter].

The record also establishes that the physician who examined the daughter found no evidence of bruising or any other signs of abuse.

[¶ 10] The court additionally found that the daughter had primarily resided with Hamm, they have a "strong bond," and Hamm "meets [the daughter's] basic needs of food, shelter, and basic protection from physical harm." However, the court also found that Hamm has "consistently exposed [the daughter] to extreme drama, conflict, and strife," the daughter has been caught in the middle of "bitter, dramatic conflict" since her birth, and Hamm had prevented Grant from seeing the child in order to punish him. Finally, the court found that Hamm had assaulted Grant in the child's presence.

[¶ 11] The court's findings are supported by competent evidence in the record. Hamm argues, however, that the court erred by failing to explicitly state in its decision that her PFA complaint was filed to gain a tactical advantage or that it tended to show that she will be less willing in the future to cooperate with Grant in caring for their daughter, and thereby failed to satisfy the requirements of section 1653(3)(0) and our opinion in *Campbell.*

[¶ 12] The formalistic approach Hamm urges is not persuasive. A judgment need not mirror the language of section 1653(3)(O)—that a parent's willful misuse of the protection from abuse process was filed to gain a tactical advantage and tends to show that the parent has a lessened ability and willingness to cooperate and work with the other parent in the future—if the court's explicit findings necessarily establish that very conclusion by the clear and convincing evidence standard. Here, the court's detailed findings regarding Hamm's willful misuse of the PFA process and her history of creating conflict leave no room to doubt that the court also concluded by clear and convincing evidence that Hamm's misuse of the PFA process demonstrated both a strategic attempt to influence the proceedings and a lessened ability and willingness to cooperate and work with Grant in the future.

B. Additional Best Interest Factors

[¶ 13] Hamm also argues that the court failed to consider all of the best interest factors and that it improperly relied primarily on section 1653(3)(O). We have stated that although the "court has a duty to make findings sufficient to inform the parties of the reasoning underlying its conclusions and to provide for effective appellate review," *Nadeau v. Nadeau,* 2008 ME 147, ¶ 33, 957 A.2d 108 (quotation marks omitted), "a court may enter a judgment without making explicit findings addressing best interest or any other issue, unless findings are requested," *Ezell v. Lawless,* 2008 ME 139, ¶ 9, 955 A.2d 202. Furthermore,

> although a court is required to consider each of the factors listed in 19–A M.R.S. § 1653(3) in determining the best interest of a child, a court's decision need not address every factor. There is no value in courts robotically addressing every

statutory factor solely for the sake of assuring the parties that it considered every factor, so long as it is otherwise evident that the court has evaluated the evidence with the best interest factors in mind.

*Nadeau,* 2008 ME 147, ¶ 35, 957 A.2d 108.

[¶ 14] The court expressly stated that it applied "all" relevant law, but that it considered in particular the best interest factors listed in section 1653(3)(A), (B), (D), (E), (F), (G), (H), (I), (J), (K), (L), (N), and (O). These factors include inquiries into the child's age, relationship with the parents, current living arrangements, and future stability; the parents' motivations and capacity for guidance and affection; the parents' capacity and willingness to cooperate with each other and allow contact with the child; and domestic abuse between the parents, among other considerations. *See* 19–A M.R.S. § 1653(3). As discussed above, the court's findings explicitly addressed the daughter's young age, her exposure to the parties' conflict since birth, Hamm's physical abuse of Grant, Hamm's tendency to prevent him from having contact with their daughter as punishment for his behavior toward Hamm, and Hamm's bond with the child. There is no doubt that the court undertook a comprehensive best interest determination with all of the statutory factors in mind. Moreover, Hamm made no M.R. Civ. P. 52 motion for additional findings of fact and conclusions of law, and it is "well-settled that in the absence of" such a motion, we assume "that there was competent evidence in the record, which the court considered, to support the ... judgment." *Coppola v. Coppola,* 2007 ME 147, ¶ 25, 938 A.2d 786.

[¶ 15] Neither was it error, as Hamm also contends, for the court to include more extensive findings relative to section 1653(3)(O) than it did for the other best interest factors because, unlike the other factors, subsection (O) requires specific findings when the court relies on it. The court properly considered several of the best interest factors, including section 1653(3)(O), and did not err or abuse its discretion in its ultimate award of sole parental rights and responsibilities to Grant with limited rights of contact awarded to Hamm. *See Grenier v. Grenier,* 2006 ME 99, ¶ 23, 904 A.2d 403.

The entry is:

Judgment affirmed.