MAINE SUPREME JUDICIAL COURT                         Reporter of Decisions
Decision:     2018 ME 30
Docket:       Pen-17-441
Submitted
  On Briefs:  February 26, 2018
Decided:      March 6, 2018

Panel:        ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILD OF NICHOLAS M.


PER CURIAM

[¶1] Nicholas M. appeals from a judgment of the District Court (Newport, *Budd, J.*) terminating his parental rights to his child[1] pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i), (ii), (iv) (2017). He argues that there is insufficient evidence to support the court's findings of unfitness, that the court abused its discretion when it denied his motion to continue the hearing on the petition to terminate his parental rights, and that the court abused its discretion when it denied his attorney's motion to withdraw. We affirm the judgment.

---

[1] The mother consented to the termination of her parental rights, and she is not a party to this appeal.

## I. BACKGROUND

[¶2]  The court made the following findings of fact, and even though they are expressed in terms of witness testimony, all are supported by competent evidence in the record:

> The final hearing in this matter occurred September 8, 2017 and was relatively brief. . . .
>
> [The father] himself did not appear for the final hearing.  In spite of this, the court finds by clear and convincing evidence that he was aware of the hearing . . . .  There was not so much as a phone call to the court on the day of the hearing. . . .
>
> [The permanency caseworker] testified that she has worked for two years in her current capacity, and has been involved with this case for most of its history.  She testified that [the father] maintained somewhat regular e-mail contact with the Department early in the case.  According to [her], among the notable expressions made by [the father] during this time was his acknowledgement in December 2016 that he believed he was [the child's] father.  During this time, [the father] expressed interest in participating in the reunification and rehabilitative services the Department could offer.  However, beginning in May 2017, [the father] discontinued his communication with the Department.
>
> [The permanency caseworker] testified that, to the best of her knowledge, [the father] had contact on only one occasion with [the child].  That supervised visit took place on February 23, 2017, and was largely facilitated by the Department, which scheduled the visit, arranged the supervision and provided [the father] with bus transportation . . . .  [The permanency caseworker] testified further that [the father] made no further expression of interest in participating in the various rehabilitative or other reunification services the Department could provide him, other than to indicate

that his probation restrictions limited his ability to leave the state of Rhode Island with any regularity.

[The permanency caseworker] confirmed that [the child] entered Department custody on September 12, 2016 . . . . [The child] is doing well and has established a loving bond with his foster parents and foster siblings.

. . . .

[The guardian ad litem's] final report . . . indicates that he had an opportunity to speak with [the father] the week prior to the final hearing. The report states that [the father] last saw [the child] in February and [the father] is currently on probation for a domestic violence incident that occurred just after that visit. [The guardian ad litem] reports that [the father] was also arrested in September 2016 following his involvement in a domestic incident with his then-girlfriend. [The guardian ad litem's] report notes that [the father] was substantiated in 2010 by [the Department] in Maine for physical abuse towards [the child's] older brother.

(Footnotes omitted) (quotation marks omitted).

## II. DISCUSSION

[¶3] The court found, by clear and convincing evidence, that (1) the father is unwilling or unable to protect the child from jeopardy, and that this circumstance is unlikely to change within a time which is reasonably calculated to meet the child's needs; (2) the father is unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs; and (3) the father has failed to make a good faith effort to rehabilitate and reunify with the child. Contrary to the father's contention, each

of the court's unfitness findings is supported by competent evidence in the record. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii), (iv); *see also In re River B.*, 2017 ME 77, ¶ 6, 159 A.3d 1222.

[¶4] We are not persuaded by the father's additional arguments that the court abused its discretion in denying his motion to continue and his attorney's motion to withdraw. On the record before us, neither the court's denial of the motion to continue nor its denial of the motion to withdraw constitutes an abuse of discretion. *See In re Trever I.*, 2009 ME 59, ¶ 28, 973 A.2d 752; *see also In re J.R.*, 2013 ME 58, ¶ 19, 69 A.3d 406.

The entry is:

Judgment affirmed.

---

Randy G. Day, Esq., Garland, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Newport District Court docket number PC-2015-10
FOR CLERK REFERENCE ONLY